Leroy FRYREAR, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

July 2, 1971.

Rehearing Denied Oct. 29, 1971.

David Kaplan, Stuart Lyon, Edward T. Brady, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Commissioner.

The appellant Leroy Fryrear was convicted by a jury in Jefferson County Kentucky, of the rape and murder of a 19-year-old girl. The two charges were tried together and he was sentenced to life imprisonment without benefit of parole on the charge of rape, and was sentenced to death for the murder. The rape and the murder were committed upon the same girl and much of the evidence which constituted proof of guilt of the rape likewise constituted proof of guilt of the murder.

The notice of appeal reads as follows:

"Comes the defendant, Leroy Fryrear, and states that he intends to appeal his *sentence of death* to the crime of willful murder to the Kentucky Court of Appeals. That on Friday May 23, 1969, this order was entered to the court records and defendant is now appealing *this judgment of death* entered May 23, 1969." (Emphasis ours)

No appeal has been taken from the judgment in the rape case. The sentence to life imprisonment without benefit of parole on that charge has not been challenged and it remains in full force and effect. With respect to the murder charge, the appeal is not from the conviction but from the sentence imposed.

The appellant apparently accepts a life sentence without benefit of parole on the rape conviction, and an additional life sentence on the murder charge would constitute no additional punishment to him. It is the death penalty on the murder charge which amounts to additional punishment and his appeal is from the imposition of the death penalty. We review the case for the sole purpose of determining whether the death penalty was validly imposed.

The appellant alleged numerous grounds of error. It will not be necessary to consider any of them except the contention that the trial court erred in excusing for cause certain jurors who indicated a reluctance to impose the death penalty and the contention that the death penalty amounts to cruel and inhuman punishment prohibited by the Constitution. We are invalidating the death sentence and the other alleged errors are not likely to reoccur.

In the voir dire examination of prospective jurors, the Commonwealth's attorney routinely inquired if the jurors had any conscientious scruples against the imposition of the death penalty. Some 15 jurors indicated such scruples and all of them were excused for cause. Twelve of the 15 can perhaps be said to have indicated that they could not impose a death penalty in any case under any circumstances. The other three can only be said to have indicated opposition to the death penalty or a reluctance to impose it.

The questioning of jurors G. M. Patterson, C. H. M. Morton and William Blackwell was as follows:

JUROR PATTERSON:

"Q Do you have any conscientious scruples against the imposition of a death penalty?

A I don't (inaudible)

THE REPORTER: I can't hear you, ma'am.

A I don't believe in the death penalty.

Q You don't believe in the death penalty. By that I take it that you could not find a death penalty in this case no matter what the facts were, or in any case?

A I wouldn't think so.

Q Is that correct?

A Yes, sir.

MR. SCHROERING: All right, for cause, your Honor.

MR. KAPLAN: Judge—

BY THE COURT: (Interposing) If the Commonwealth proved beyond a reasonable doubt in your mind the charges and allegations in the indictment, could you then vote for the *death* penalty, or you could not?

THE JUROR: Well, if it was proven —

THE REPORTER: (Interposing) I can't hear you ma'am.

THE JUROR: If it was proven beyond any doubt I could.

BY THE COURT: A reasonable doubt?

THE JUROR: Yes.

BY THE COURT: But it would have to be proven to you beyond a reasonable doubt?

THE JUROR: Yes sir.

Q Do you mean by any doubt whatsoever or do you mean by a reasonable doubt?

A If there would be any doubt, in my mind, I couldn't vote for a death sentence if there was any doubt in my mind.

MR. SCHROERING: Judge, she says 'any doubt,' and the Commonwealth has the burden of proving beyond a reasonable doubt.

MR. KAPLAN: I don't believe it's for cause, Judge.

MR. SCHROERING: Would you rather not sit on a death penalty case?

THE JUROR: Yes, I would rather not.

BY THE COURT: For cause, then. Step aside Mrs. Patterson."

JUROR MORTON:

"Q Do you have, sir, any conscientious scruples against the imposition of the death penalty?

A No.

Q You do not?

A No.

Q I take it then that if the Commonwealth proved its case to your satisfaction beyond a reasonable doubt that you could find a death penalty in this case?

A I think I could.

THE REPORTER: I'm not sure I heard him.

MR. SCHROERING: He said he thinks he can.

By Mr. Schroering:

Q Do you have any reservations about it?

A The only reservation I have is that even though the punishment might be justifiable based on the facts—

THE REPORTER: (Interposing) A little louder, please?

A (Continuing) Even though the punishment might be justifiable, based on the facts, I might find it rather hard to carry into effect what I honestly believe he deserves.

THE REPORTER: Find it rather hard, what?

MR. SCHROERING: That it would be very hard to carry into effect what he honestly believes he deserves.

By Mr. Schroering:

Q Is that what you're saying?

A Yes, it would be difficult for me to sit on the jury.

BY THE COURT: Mr. Morton, would you rather not sit on the jury?

THE JUROR: In one way I would rather not. In other words, if I actually found the facts, not purported, but the facts that justified the death penalty I would hate to have to vote for it, yet I

would know I should not vote against it. It's rather hard for me to express it.

By Mr. Schroering:

Q Would you rather not sit on the jury that considers the death penalty?

A I think if the death penalty were to be decided that I would prefer not to sit.

BY THE COURT: You are excused for cause."

JUROR BLACKWELL:

"Q Do you, sir, have any conscientious scruples against imposing the death penalty?

A I'd rather not do it.

Q You'd rather not do it?

A I'd rather not serve on the jury.

Q You'd rather not serve on a jury where one is in question?

A. That's right.

BY THE COURT: All right, step aside."

It can be seen that at least three of the potential jurors were excluded from the panel for cause although they did not state that they could not impose the death penalty in this or in any other case under any circumstances. Jurors have an option upon conviction in murder cases of imposing sentences of life imprisonment or death. We feel certain that most jurors would be reluctant to impose the death penalty and would do so only in aggravated cases and when their duty requires them to do so.

■ In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court held that a death penalty cannot be carried out when it was imposed by a jury from which all prospective jurors who voiced general objections to the death penalty or conscientious or religious scruples against its imposition were excluded.

In Witherspoon, it was stated:

"A man who opposes the death penalty, no less than one who favors it, can make the discretionary judgment entrusted to him by the State and can thus obey the oath he takes as a juror. But a jury from which all such men have been excluded cannot perform the task demanded of it. Guided by neither rule nor standard, 'free to select or reject as it [sees] fit,' a jury that must choose between life imprisonment and capital punishment can do little more—and must do nothing less—than express the conscience of the community on the ultimate question of life or death. Yet, in a nation less than half of whose people believe in the death penalty, a jury composed exclusively of such people cannot speak for the community. Culled of all who harbor doubts about the wisdom of capital punishment—of all who would be reluctant to pronounce the extreme penalty —such a jury can speak only for a distinct and dwindling minority.

If the State had excluded only those prospective jurors who stated in advance of trial that they would not even consider returning a verdict of death, it could argue that the resulting jury was simply 'neutral' with respect to penalty. But when it swept from the jury all who expressed conscientious or religious scruples against capital punishment and all who opposed it in principle, the State crossed the line of neutrality. In its quest for a jury capable of imposing the death penalty, the State produced a jury uncommonly willing to condemn a man to die.

It is, of course, settled that a State may not entrust the determination of whether a man is innocent or guilty to a tribunal 'organized to convict.' Fay v. New York, 332 U.S. 261, 294, 67 S.Ct. 1613, 1630, 91 L.Ed. 2043. See Tumey

v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749. It requires but a short step from that principle to hold, as we do today, that a State may not entrust the determination of whether a man should live or die to a tribunal organized to return a verdict of death. Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected.

Whatever else might be said of capital punishment, it is at least clear that its imposition by a hanging jury cannot be squared with the Constitution. The State of Illinois has stacked the deck against the petitioner. To execute this death sentence would deprive him of his life without due process of law."

We think Witherspoon is controlling and this case must be reversed upon its authority.

In Witherspoon, it was carefully pointed out that the imposition of the death penalty was proscribed but the conviction of the crime was not disturbed. So it is here. The conviction of the appellant of the crime of murder is not invalidated. The imposition of the death penalty under the circumstances shown must be set aside. See Meyer v. Commonwealth, Ky., 472 S.W.2d 479, decided July 2, 1971.

Accordingly we reverse the sentence of death imposed upon the appellant and direct that he be granted a new trial limited to the issue of the punishment to be imposed upon him for the offense of murder of which he stands convicted. Upon retrial, a new jury will be selected in compliance with the requirements of Witherspoon and the trial for assessment of punishment will proceed as if the accused had entered a plea of guilty.

■ The appellant cites no authority for his contention that the death penalty amounts to cruel and inhuman punishment. This court has consistently rejected that proposition, the latest such decision being Williams v. Commonwealth, Ky., 464 S.W. 2d 244, decided April 2, 1971. We adhere to the view expressed therein.

The judgment is reversed for further proceedings consistent with this opinion.

All concur.