Jesse L. **PETERS**, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Feb. 18, 1972.

Joseph J. Grace, Jim L. Lindblad, Paducah, for appellant.

John B. Breckinridge, Atty. Gen., James M. Ringo, Asst. Atty. Gen., Frankfort, for appellee.

EDWARD P. HILL, Jr., Judge.

This appeal is from a judgment of the McCracken Circuit Court upon a jury trial finding Jesse Peters guilty of wilful murder and imposing the death sentence.

Although there is no issue raised regarding the sufficiency of the evidence, a brief outline of the facts of the case may be helpful. The appellant, Jesse Peters, was arrested, indicted, tried and convicted for the murder of his mother, Aurelia Peters Dale. The evidence, while being circumstantial, is very indicative of guilt. The victim's holographic will was introduced into evidence. It contained a statement that Jesse had threatened to "burn her head" and further stated that she understood him to mean he would burn it with a gun. Also, the victim's sister testified that she had heard appellant threaten his mother.

A Mr. Dance saw the victim drive her car past his home and pull into the driveway of appellant's home. He also heard four or five shots fired shortly thereafter. Another neighbor, Mr. Abanatha, saw the appellant driving his mother's car back down the road away from the house. The car and the victim's body were found later that day, approximately two miles away, in a field by three children who were horseback riding. The bullets which killed Mrs. Dale were shown to match a bullet or bullets found imbedded in a barrel used for target practice behind the appellant's home.

The appellant relies on a number of grounds which he alleges constitute reversible error. We shall identify them as this opinion proceeds.

First appellant claims he was denied a fair and impartial trial by the court's refusal to grant a change of venue. The appellant filed one hundred fifty affidavits of various people in the county who stated that in their opinions he could not receive a fair trial. The Commonwealth countered with seventeen affidavits to the contrary.

It appears the trial judge placed greater emphasis on the seventeen affidavits offered by the Commonwealth and indicated that his knowledge of those persons influenced his decision.

It is not the number of affidavits that determines whether a change of venue should be granted; rather, it is the contents and quality of each affidavit as it relates to the question of venue plus the knowledge of the trial judge of the person making the affidavit. This court has uniformly held that the trial judge has a wide discretion in deciding the questions involving change of venue. Yager v. Commonwealth, Ky., 436 S.W.2d 527 (1968); Nickell v. Commonwealth, Ky., 371 S.W.2d 849 (1963). Every case must be determined on its peculiar facts. Tarrence v. Commonwealth, Ky., 265 S.W.2d 40.

Appellant's affidavits concerning the radio and television reports do not demonstrate any untrue accounts of the crime or inflammatory or sensational reports. Of course, the bare news that a man has killed his mother is calculated to shock the conscience of all mankind, whether it be in McCracken or Letcher County or in Kalamazoo, Michigan. But that is not to say that one charged with the crime of murdering his mother cannot get a jury in any of those counties who can lay aside prejudice and try the case from the facts presented on the trial and the law of the case.

Appellant next contends that the trial court erred in overruling his objections to the manner in which *voir dire* was conducted, resulting in excusing for cause all jurors who expressed conscientious or religious scruples against the death penalty.

On June 3, 1968, the United States Supreme Court decided the case of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. This case held that prospective jurors may not be excluded for cause simply because they have voiced general objections to the death penalty or expressed religious or conscientious scruples against imposition thereof. The opinion also clearly states that it does not forbid a state to challenge for cause those who say that such reservations would prevent an impartial determination of *guilt*, nor does it prohibit exclusion of those who say they could *never* vote to impose the death penalty.

The following is the typical manner in which the *voir dire* was conducted in this case:

"Q. Do you have any religious or conscientious scruples against the death penalty?

"A. Yes.

"Q. Do you mean that you could not find a death verdict in this case?"

An affirmative answer to both questions resulted in the juror being excused for cause, and twenty-eight prospective jurors were excused in this manner.

This format, which was used on *voir dire*, was relied upon by the Commonwealth because this court held that this exact format passed constitutional muster and did not violate Witherspoon, supra, in Jaggers v. Commonwealth, Ky., 439 S.W. 2d 580 (1968). The difficulty here is that the United States Supreme Court, in a memorandum decision reversed Jaggers insofar as it imposed the death penalty and cited Witherspoon, supra, and other related cases. Jaggers v. Commonwealth of Kentucky, 403 U.S. 946, 91 S.Ct. 2282, 29 L. Ed.2d 856 (1971).

■ Inasmuch as the rule in Jaggers, supra, did not stand up in the Supreme Court of the United States under the Witherspoon doctrine, we are obliged to reverse the judgment in the instant case.

This brings us to the question of whether the judgment should be reversed for a new trial or whether the conviction should be upheld and the case remanded for the fixing of penalty only as was done in Meyer v. Commonwealth, Ky., 472 S.W.2d 479 (1971), and Fryrear v. Commonwealth, Ky., 471 S.W.2d 321 (1971).

It should be noted that in Meyer, the appellant pleaded on appeal that his "conviction" be upheld and the sentence of death be held invalid with direction to "resentence the appellant Meyer to life imprisonment." In Fryrear, supra, the only other case in which this court has thus far affirmed the conviction and reversed for the fixing of penalty only, the appeal was not "from the conviction, but from the sentence imposed."

The appeal in the present case presents a number of claimed trial errors. We now proceed to a discussion of those claimed errors.

■ It is urged that error was committed by the introduction of photographs of the deceased. The photographs were unpleasant but are not gruesome. We do not find that they were calculated to inflame the minds of the jury or to unduly prejudice the jury against the appellant. Napier v. Commonwealth, Ky., 426 S.W.2d 121 (1968).

■ Complaint is next made of the action of the trial court in permitting the appellant's former attorney to testify concerning a telephone conversation between appellant and the attorney in which the attorney advised appellant that the victim (appellant's mother) had advised the attorney that she had "decided not to divide the property" in question, which property was owned jointly by appellant and his mother. There was other evidence that appellant made threats against his mother to the effect that he would do her violence in event she did not divide the farm as requested by him. Without going into the question of who may claim that a privileged communication should not be admitted, it is sufficient to point out that the conversation was not a privileged communication between attorney and his client. The attorney merely relayed information he obtained from the mother. While it has the elements of hearsay, it is immaterial whether the mother actually told the attorney that she had decided not to divide the farm. What is important is that appellant got the information that she had so decided, which affected or could affect his state of mind toward his mother. The evidence was competent. 8 Wigmore, Evidence, § 2320.

Appellant argues that the trial court erred in failing to admonish the jury as to the credibility of four witnesses who testified that appellant offered to pay them if they would kill his mother. Two of the witnesses were serving prison terms for felonies at the time they testified; the other two had criminal records. There was no objection to this evidence and no motion that the jury be admonished as to the effect of their convictions on their testimony. Whether it was incumbent on appellant by counsel to move for such an admonition, we need not decide as we find there was no prejudice to the appellant by the failure of the court to so admonish the jury. We reach this conclusion in the light of the fact that counsel for the appellant conducted a thorough cross-examination of these four witnesses in which it was thoroughly shown that they were "jailbirds" and exconvicts.

As a final and "catch-all" argument, appellant lists a number of trial errors he claims prevented him from having a fair and impartial trial. Here are some of them. He complains that leading questions were propounded to a 13-year-old girl who discovered the body of the deceased mother of appellant. No authority is demanded in this situation as it is universally recognized that the trial judge is vested with broad discretion under these circumstances.

Next it is said by appellant that leading questions were propounded to a state trooper. Leading questions were not proper with this intelligent, adult witness, but we find no prejudice in the following alleged leading question: "Did he make any statement pertaining to a weapon?"

Appellant questions the correctness of evidence in the form of plaster casts of what the prosecution claimed were appellant's footprints. We think there was sufficient evidence of similarity of the casts to those of appellant to justify their admission in evidence.

Next appellant claims error was made in the closing argument charging that appellant associated with a "bootlegger."

He also objects to repeated reference to a statement attributed to appellant which went like this: "I'll burn your head." A number of witnesses, including a sister of the deceased and the potent and everlasting will of the deceased, attributed this statement to the appellant. If appellant made such statement, and the jury obviously believed he did, naturally he didn't enjoy hearing it mentioned or repeated. It's the mean words that come back to haunt us.

Appellant's final point under his "catch-all" argument is that the Commonwealth was permitted to introduce some evidence in rebuttal which was not properly rebuttal evidence. Here again the trial court had a discretion to allow or disallow its introduction. We find no abuse of discretion here.

The main thrust of appellant's brief demanding a reversal relates to what he terms improper comments by the trial judge. It would serve no useful purpose here to detail all the comments by the trial judge in this long and hard fought case to which the appellant takes exception.

In resolving the question whether the conviction as well as the penalty should be reversed, we take into account the fact that the evidence was circumstantial although strongly indicative of guilt. We also consider that a number of trial errors were made, neither of which taken alone would have justified a reversal; but the accumulation of these errors inclines this court to also reverse the conviction with directions to grant appellant a full, new trial.

The judgment is reversed.

All concur.