**Charlie "Cat" SMITH, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

Sept. 16, 1977.

Rehearing Denied Nov. 18, 1977.

Jack E. Farley, Public Defender, Thomas R. Lewis, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., James L. Dickinson, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

Appellant was indicted by the Jackson County Grand Jury on a charge of murder (KRS 507.020) in the death of his wife on July 13, 1976. He was tried and convicted on October 27, 1976, and sentenced to 20 years' imprisonment. Hence, this appeal.

It appears to be the theory of the Commonwealth that appellant and his wife went to the old Smith farm, where he killed his wife in the hopes of recovering $10,000 in insurance with which he could repurchase his ancestral farm, which had recently been sold.

Appellant contends that the trial court erred, (1) in not directing a verdict of "not guilty" at the conclusion of all the evidence;

(2) in permitting a material witness to remain in the courtroom and listen to other witnesses before himself testifying; (3) in permitting the introduction into evidence of a plaster of paris cast of an automobile tire impression and photographs of the tire tracks; (4) in permitting testimony relating to an out-of-court experiment; and (5) in permitting photographs of the deceased to be introduced into evidence. Additionally, he charges that the cumulative effect of these alleged errors deprived him of a fair trial.

By reason of the unusual circumstances surrounding this case, we deem it necessary to make an in-depth analysis of the evidence. Although the appellant was the last witness to testify, we feel that a better understanding of all of the facts will be had if we discuss first his testimony and relate the remaining evidence to his version of what happened.

Appellant delineates the fateful event in this manner. He would have us believe that on July 13, 1976, he and his wife, Mary Lee, left their trailer home at Bear Wallow, in Madison County, Kentucky, at about 7:00 p. m. to go visit Laura Howard, who lived in Clay County. Enroute to her home the brakes on his 1968 Chevrolet stationwagon gave way, and he attempted to remedy the condition by pouring motor oil in the master cylinder. After doing so, he put the can in the car and drove slowly without brakes. At about 3:00 a. m. in the morning, while going pretty fast downgrade on Leeger Fork road, a gravel road, the car hit a log about six inches in diameter and ran off the right side of the road. Appellant received a bump on his head. Mary Lee was thrown against the dashboard and out of the car, landing beside the right front door. Appellant then dragged the deceased down the road from the car, which had ignited and was burning. He rested her head on his shoulder for awhile and tried for about an hour to revive her. Mary Lee's head was bleeding so he left her to go get assistance. Appellant first went to Vester Allen's home. He had no telephone, but he took appellant to Orville Evans' home, where there was a telephone, and the coroner was called.

Appellant denied that he killed his wife; denied that he was at the old Smith home place that night, therefore, he could not have built a fire, nor could his car tire have made an impression in the ground at that place, nor could his car have made an oil-drop spot there. Appellant denied that he ran his car over his wife, but he could not say whether the wheels hit her when she was thrown from the car. He said that he did not know what caused Mary Lee's death, that she was all right immediately before the wreck and that she lived for about an hour after the wreck, but did not speak. He denied having life insurance on his wife, but said he did have a policy of liability insurance on his automobile and may have said something to Mr. and Mrs. Metcalf about having liability insurance coverage. He also denied having any knowledge of how the oil can got into a ditch among some pine brush, and he denied setting fire to the car.

Dr. James T. McClellan, a pathologist with many years of training and experience, performed an autopsy on the body of Mrs. Smith about 9:30 p. m. on the same day as the wreck and the burning of the automobile. The body had been undressed, washed and embalmed prior to its delivery to the doctor for examination. The examination revealed extensive lacerations in her scalp, hemorrhage and hematoma of the scalp, multiple fractures of the ribs, anteriorly extensive pelvic fractures, hemorrhage behind the intestines and in the tissues of the back, hemorrhage in the lower lobe of the right lung which appeared to be due to a depressed fracture of the rib poling into the lung, fracture of the right leg bone where it is attached to the pelvis, fracture of the pelvis, fracture of the upper and lower pubic rami, and fracture of the sacrum. The doctor was of the opinion that Mary Lee's death was due to multiple traumatic injuries to the body and that the injuries were not the kind people ordinarily receive when they are killed inside of a car crash. The doctor gave as his opinion that the injuries to Mary Lee's body were con-

sistent with injuries a person might be expected to receive if run over by an automobile.

Harry Justice, the coroner of Jackson County, testified that, pursuant to a telephone call, he arrived at the scene of the wreck at about 4:00 a. m. He said the car was in flames and he found the victim's dead body lying about 75 to 80 feet left of the automobile in some weeds, where the appellant had dragged it. He noticed very little blood around the body.

Tommy Sloane, a state trooper, testified that he arrived at the wreck shortly after 8:00 a. m. and found the burned stationwagon off the gravel road, on the right shoulder. The car's left rear wheel was about two feet out on the road. It had run over a log about six inches in diameter and had come to rest in a brush pile, with no structural damage.

Vester Allen testified that appellant, whom he had known all of his life, came to his home around 4:00 a. m. to use the telephone. He stated that appellant said he had wrecked his car and that his wife was dead. Allen did not have a telephone, but he took appellant to the home of Orville Evans, who did have one, and appellant telephoned for assistance. Allen also testified that appellant told him that he had worked and worked with his wife and had gotten blood all over himself. The witness said, however, that he saw no blood on the appellant. Allen stated that the appellant said he had insurance but was not sure it would pay off. Allen visited the scene of the wreck two times, once in the dark and the other time after daylight. He did not, on either occasion, see any blood around the grounds.

Howard Metcalf testified that appellant came to his home about daybreak and said he had wrecked his car and killed his wife; that appellant was worried about losing his glasses; and that appellant talked of the $10,000 worth of insurance he would get from his wife's death and of using part of it to buy back the old Smith home and farm which he had recently sold. This witness found a quart oil can some 25 to 30 feet below the front of the car and, after several days, gave the can to Detective Ronnie Gay.

Ronnie Gay, a detective and general investigator for the Kentucky State Police, arrived at the scene of the accident about 9:30 a. m. He described the remains of the vehicle as did Tommy Sloane. He took pictures of the vehicle, both prior to and subsequent to its removal from the scene, and at about 10:00 or 10:30 a. m., while at the old Smith farm, he also took pictures of some tire tracks, a picture of a wet oil spot, pictures of weeds showing marks as if something had been dragged through the weeds, and also took pictures of the deceased's body on the same day as the wreck. He testified that he had retrieved a piece of the tread from one of the tires on the stationwagon, which, during the fire, was mashed in the mud and had not burned. He compared it with a plaster of paris cast of a tire track made at the old Smith farm and stated the partial tread from the car matched the tread in the mold made at the farm. Gay also produced the oil can and verified that the fingerprints on the can matched those of the appellant. He stated also that there was only a very small amount of blood where the body was picked up, but that there was none near the car.

Detective Gay and Trooper Sloane, in their official vehicle, drove the latter part of the route taken by appellant. Gay stated that they drove, without the use of brakes, down Leeger Fork road to where the wreck occurred. He said, however, that at another point in the route they could not have made one of the curves without applying the brakes. Gay exhibited the blouse and white shorts which were worn by Mary Lee. The shorts had a grass stain on the right rear side and the blouse had blood on it.

Raymond Allen, son of Vestor Allen, testified that he saw the appellant during the morning and later on in the day. At the latter time he took appellant to Howard Metcalf's house and on this trip the appellant said he had $10,000 worth of insurance on his wife.

Christine Smith Vandever, daughter of appellant and his wife and who lived in Ozark, Alabama, testified that her mother and father had been having marital difficulties and were separated for a few weeks earlier in the year.

Counsel for appellant, at the conclusion of the Commonwealth's evidence and again at the close of all of the evidence, moved the court to direct a verdict of acquittal because, allegedly, the evidence was insufficient to establish that the appellant was guilty of any criminal offense. He now commences his argument by challenging the sufficiency of the proof to establish corpus delicti, which we have more recently referred to as "the body of the crime."

In *Perry v. Commonwealth,* Ky., 514 S.W.2d 202 (1974), in speaking on the subject, we defined the principle "as the requiring of the prosecution in a homicide case to show (1) a death and (2) that the death resulted from the criminal agency of another." We went on to say that the body of the crime may be shown by circumstantial evidence. In *Trowel v. Commonwealth,* Ky., 550 S.W.2d 530 (1977), this court said:

"If under the evidence as a whole it would not be clearly unreasonable for a jury to find the defendant guilty, he is not entitled to a directed verdict of acquittal. * * *"

Measured by these standards, we must determine the sufficiency of the evidence to justify a submission of the subject case to the jury. In doing so, we must separate the sheep from the goat or fact from fiction. The evidence establishes the following facts:

1. Mary Lee Smith is dead.

2. The physical impossibility of wrecking a stationwagon going pretty fast on a gravel road without scuffing up the road. The road was not scuffed up.

3. A plaster of paris cast of a tire track taken from the old Smith farm matched the tread of one of the tires on appellant's wrecked car.

4. Appellant's numerous comments after the wreck of receiving insurance money from the death of his wife and using it to buy back the old Smith farm. These comments are not without evidentiary value.

5. Death was caused by trauma so great as to be consistent with the body having been run over by a motor vehicle, possibly more than once.

6. Several months prior to her death, Mary Lee and appellant had marital difficulties, but had reconciled.

7. An 8–hour trip to traverse a distance of about 41 miles.

8. Appellant denied being at the farm.

9. A large patch of grass at the farm that had been pressed down.

10. Warm ashes from a fire at the Smith farm.

11. The automobile came to rest just off the right side of the road, with about two feet of it still on the roadway.

12. A small splotch of blood was found where the deceased was lying alongside the road.

13. An oil can found about 25 feet in front of the car in a pine thicket.

14. Appellant's fingerprints on an oil can, which he identified as belonging to him.

15. Appellant's claim to have had blood on him, but none was seen by any witness.

16. No bruises, cuts or abrasions on the face of the deceased.

17. The wrecked car sustained no bent fenders or other structural damage.

18. The car, from some unknown cause, ignited and burned from end to end.

19. After the wreck the body of the deceased was lying on the ground just a little way from the front door on the passenger's side of the car.

■ It is difficult to arrive at a clear picture of just what did happen. Did appellant and his wife go to the farm, where he killed her, run the car over her body several times, stuff her body in the car, run off the road so as to make it appear that there was a wreck, take the body from the car, and

then saturate the car with oil and burn it? If so, it is not overwhelmingly proven by the preponderance of the evidence. We cannot, however, say that it would be clearly unreasonable for a jury to find the appellant guilty. The jurors had the right to disagree with appellant's version of what happened, especially in light of the conflicting testimony. The conflict in the testimony goes deeper and indicates that appellant did not tell the truth. It constitutes an attempted coverup of the killing of his wife, having in mind the objective of collecting insurance money with which to purchase the old Smith home place. We are of the opinion that the evidence was sufficient to justify the submission of the case to the jury.

Officer Gay was the sixth witness for the Commonwealth to testify. Counsel for appellant objected to the officer being permitted to testify because he had been permitted to remain in the courtroom and hear the testimony of other witnesses, after they had been sequestered. RCr 9.48 provides:

"If either a defendant or the commonwealth requests it, the judge may exclude from the hearing or trial any witness of the adverse party not at the time under examination, so that he may not hear the testimony of the other witnesses. * * *"

■ The trial judge considered the witness as an officer of the court, overruled appellant's objection, and permitted the officer to testify. Being an officer of the court does not in and of itself permit the officer to remain in the courtroom and hear the testimony of other witnesses before testifying himself. The better practice is to cause all witnesses to leave the courtroom and remain out of the hearing of witnesses until after each has been called to testify. Nevertheless, the trial judge has a discretion in matters of this nature, and we cannot say that there was an abuse of that discretion in the present case.

■ The plaster of paris cast of the automobile tire print made at the Smith farm conformed to the tread taken from the tire of the wrecked vehicle. Even though the quality of the cast may not have been the best, it was certainly competent to tie the appellant to the farm and to contradict his denial of having been there at all. The photographs revealing the tire prints in the ground, although of poor quality, reflect the character of the tire tread, and the supportive effect of the photographs was to place appellant not only at the farm but being there at sometime between the time appellant left home the prior evening and the time of the wreck. Any evidence, albeit circumstantial, which tends to connect the person charged with the commission of a crime is admissible. We think there was sufficient evidence of similarity of the plaster of paris cast to the tire tread to justify admission into evidence. Peters v. Commonwealth, Ky., 477 S.W.2d 154 (1972).

■ Officer Gay testified at length about the out-of-court experiment which he made in driving his police vehicle over the same route which appellant had allegedly driven. He stated that he drove his car at a slow speed and had no difficulty in negotiating the curve at the point where the wreck occurred. Appellant charges that such evidence was incompetent. The Commonwealth concurs, as do we. There was no showing that the condition of the highway was the same on the day of the experiment as it was on the day of the wreck. The vehicle used in the experiment was all together different than that driven by the appellant. As a matter of fact, there was a total lack of proper foundation laid to authorize testimony relative to such an experiment. Although the admission of this testimony was erroneous, we do not believe it was prejudicial to the substantial rights of the appellant.

■ The black and white photographs taken of the deceased clearly demonstrate the character, location and extent of the cuts, bruises and abrasions which she sustained. There is nothing gruesome about them. They tend to support the testimony of the coroner and the pathologist.

As a final catchall argument, appellant contends that the cumulative effect of the

alleged errors warrants a reversal. The only issue pointed out by appellant that was erroneous is that the court permitted testimony relative to the out-of-court experiment. Consequently, there were no cumulative errors which could prejudice the appellant's right to a fair trial.

The judgment is affirmed.

CLAYTON, JONES, STEPHENSON and STERNBERG, JJ., concur.

PALMORE, J., files a dissenting opinion in which REED, C. J., and LUKOWSKY, J., join.

PALMORE, Justice, dissenting.

The principal basis for my dissent is that I do not think the evidence was sufficient to justify a finding of guilt, nor can I accede to the proposition that the evidence consisting of the trooper's experiment was not prejudicial. The Chief Justice and Justice Lukowsky concur in this dissenting opinion.