Charles C. MILBURN, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

No. 88–SC–795–MR.

Supreme Court of Kentucky.

Dec. 21, 1989.

Rehearing Denied May 24, 1990.

Frank E. Haddad, Jr., George Salem, Jr., Louisville, for appellant.

Frederic J. Cowan, Atty. Gen., Joseph R. Johnson, Asst. Atty. Gen., Criminal Appellate Div., Frankfort, for appellee.

LAMBERT, Justice.

Appellant Charles C. Milburn was convicted in the Jefferson Circuit Court of wanton murder and two counts of first degree assault. Sentenced to a total of twenty years imprisonment, Milburn received twenty years as to wanton murder and ten years on each of the assault charges, to run concurrently. Appellant appeals his conviction to this Court as a matter of right.

The events from which the charges against appellant arose followed an afternoon and evening of excessive drinking. The evidence showed that the episode began on Saturday afternoon when appellant shared a fifth of vodka and several beers with a friend. Meeting up with another friend, one J.J. Jones, appellant and Jones consumed their first of many pints of gin and then departed for a local combination liquor store and pool hall. There appellant drank more gin and an undetermined amount of beer. He also shot several games of pool with one of the soon-to-be victims, Kenneth Finch, to whom he lost.

Finch testified that appellant owed him $2.00 from their bet on the outcome of the pool match. Appellant gave a $20 bill to Jones to get change. However, appellant apparently never paid his debt to Finch, as he left the pool room at the barkeep's request after scuffling with Jones over the whereabouts of the change. Realizing that he was too drunk to drive, appellant decided to sleep it off in his truck which was parked close by on the street.

Appellant was awakened awhile later by someone grabbing him through the open truck window. Appellant testified that he heard several people nearby discussing a plan to take his money. Unsuccessful in his attempts to push away the unidentified individual who appellant testified continued to attack him, appellant eventually picked up a gun, alighted from the truck and began firing. Three individuals were shot, including Kenneth Finch, and a passerby. The third victim, the alleged attacker, died from a bullet wound to the head.

Appellant fled the shooting scene in his truck. Near the Louisville airport, appellant struck a guardrail at a high rate of speed, flew down an embankment, hit a fence and, finally, bounced back onto the road. Police officers investigating the accident questioned appellant and placed him under arrest in connection with the earlier shootings before he was taken to the hospital.

The Commonwealth charged appellant with murder and sought to prove that he intentionally shot the victims. Milburn asserted the defenses of self-protection and extreme emotional disturbance. He testified that he only intended to scare his attackers away by firing at the ground. The jury evidently did not fully accept either theory, as appellant was convicted of wanton murder, rather than intentional murder. The jury also found appellant guilty of wanton first degree assault on the two assault counts.

Appellant presents eight allegations of error. In his first argument, appellant contends the circuit court erred by allowing William McBrayer, an expert witness for the Commonwealth, to testify outside the confines of his report. Firearms examiner McBrayer filed a brief report which was made available to appellant prior to trial. The report listed four items under the heading "Examination Requested." One of the requests was to "[d]etermine if there are lead residues present on Exhibit 7." Exhibit 7 was a hair sample from the head wound of the deceased victim. The section of the report entitled "Results of Examination" contained five concise findings, one of which was

"A light reaction to lead residue noted on Exhibit 7."

McBrayer's testimony concerning this item is the basis for appellant's claim of error.

Several weeks before trial, the Commonwealth moved to depose McBrayer, because he would have resided out of the State by the time of trial. The court entered an order scheduling a video deposition. The order included the judge's hand-written amendment requiring the Commonwealth to give the defendant a summary of McBrayer's testimony six hours prior to the video deposition. The deposition was never taken.

Instead, McBrayer was called to testify at trial, and in this testimony reviewed the findings contained in his report. After identifying the testing procedure as to lead residue, the witness explained that lead residue is expelled from the muzzle or "business" end of the firearm. Appellant immediately objected on the basis of the deposition court order amendment, which he interpreted as prohibiting McBrayer from testifying outside of the contents of the report unless the defense had received a summary of this testimony six hours before.

An extended bench conference followed, during which the trial judge agreed with appellant that any testimony about proximity between the muzzle end and the victim's head was outside the report. Appellant argued that whether McBrayer testified by deposition or at trial, the purpose of allowing discovery was to prevent unfair surprise. Ultimately, appellant's objection was overruled, however, because the trial court did not believe the provisions of the deposition order applied to the witness's in-court testimony. When direct examination resumed, McBrayer testified that it would be consistent with his findings to assume the weapon was in close proximity to the victim's head when it was fired.

Appellant contends that he was entitled to advance notice of this information under the court's discovery order pursuant to RCr 7.24(1)(b), the court's deposition order amendment protecting appellant from surprise, and this Court's recent decision in *Barnett v. Commonwealth*, Ky., 763 S.W.2d 119 (1988). In *Barnett*, we reversed the appellant's conviction of intentional murder in part because the Commonwealth's serologist was permitted to testify that the faint traces of blood found on appellant's hands and arms were "attributable to washing away the blood that could have been expected from the victim's wounds." *Id.* at 123. Finding that the opinion was admissible, though supported only weakly by the inference that appellant could have washed his hands in a nearby puddle, we nonetheless held that

"appellant was entitled under RCr 7.24 to be confronted with the fact that this opinion would be presented against him before the trial started *so that he had a reasonable opportunity to defend against the premise.* " *Id.* Emphasis added.)

Citing *James v. Commonwealth*, Ky., 482 S.W.2d 92, 94 (1972), for the proposition that the system cannot tolerate "a cat and mouse game whereby the Commonwealth is permitted to withhold important information requested by the accused," we found in *Barnett* that the report provided by the Commonwealth to Barnett omitted a significant piece of information. Similarly, in the case at bar, the firearms examiner's report omitted the expert's opinion as to what the physical findings indicated.

Unlike the instant case, however, the expert's conclusion in *Barnett* was based not only on the premise contained in the report, but also on an additional and necessary premise. To reach the conclusion that Barnett may have washed away the victim's blood, the serologist relied on the light blood traces he found on Barnett's hands and arms. But in order to be relevant and admissible, the expert's opinion also had to be based on evidence that Barnett had an opportunity to wash his hands. Yet without prior knowledge of the expert's opinion, Barnett had no reason to develop proof that the puddle near the murder scene was undisturbed or that Barnett's person or clothing was not damp or splashed from washing, so as to refute the expert's opinion.

In contrast, the firearms examiner's opinion in the case *sub judice* was drawn directly from the premise that a light reaction to lead residue was found in hair taken from the wound to the victim's head. The report stated that one of the purposes of the examination was to determine whether lead residue was present on the victim's hair sample. This information serves the commonly recognized purpose of determining the proximity between the gun muzzle

and the victim.[1] The expert relied on no additional premise against which appellant claims a need to defend himself.

Under the facts presented, we hold the trial court did not err under discovery rules, court orders or *Barnett* in allowing the expert to testify as to his opinion on proximity based upon the results of his examination of the evidence.

■ Appellant next contends that the trial court erred when it permitted the Commonwealth to introduce into evidence two knives which were not used in the murder and assaults for which appellant was charged. Milburn claims the knives were irrelevant and further that the Commonwealth used them only to unfairly prejudice the jury by casting aspersions on appellant's character.

The Commonwealth first referred to a knife during the examination of Raymond Burnley, a witness to the events surrounding the shooting. When he testified that neither appellant nor Jones displayed a knife when they left the pool hall, the prosecutor confronted Burnley with a statement he made previously to a police officer. Burnley did not recall telling the officer that he saw appellant open a knife before he climbed into his truck, but stated that if he had told the police that, then appellant probably did have a knife.

Appellant objected to the introduction of the knives or photographs thereof many times during the testimony of three police officers who found two knives on the ground beneath the open door to appellant's truck at the scene of the accident. The Commonwealth argued that the knives were relevant to negate the defendant's

---

1. "Determining the distance between a firearm and a target at the time the firearm was discharged is often important in cases in which suicide, self-defense, or accidental shootings are an issue. Under certain circumstances, it may be possible to ascertain the *approximate* firing distance.

. . . .

... When a bullet is fired, unburned or partially burned powder and soot are propelled from the muzzle along with the bullet. Primer particles and bullet fragments may also be ejected from the muzzle.

. . . .

Thus the presence of gunshot residue on the target is indicative of both a bullet wound and a close-range shooting." P. Giannelli and E. Imwinkelreid, *Scientific Evidence* Sec. 14–5 (1986). "It has been demonstrated that the relative quantity of metal identified is related generally to the range of discharge of a firearm. Therefore, the lead and other metals detected provide information as to range...." Stone, "Evidence of Firearms Discharge Residues," 33 *Baylor L.Rev.* 285 (1981).

anticipated testimony that he feared attack and only acted in self-defense when he fired his gun. The trial court considered the extended arguments of both parties and overruled appellant's objections.

We find no error in the trial court rulings. Although the Commonwealth seems to have dwelled excessively on these knives, and we observe that while being armed is not necessarily a clear indicator of a state of mind amenable to intentional shooting, the presence of the knives could have tended to negate appellant's self-defense claim; thus making them relevant evidence.

In his third argument for reversal of his conviction, appellant complains about the admission of and playing before the jury a video tape of the scene outside the liquor store the night of the shooting. He particularly objects to a portion of the tape which focused on a large pool of blood, and the simultaneous commentary of the investigating police officer.

This videotape evidence does not fall outside of the broad category of photographs which we have found admissible under a liberal approach recognized in *Gall v. Commonwealth*, Ky., 607 S.W.2d 97, 106 (1980), and continued through *Wager v. Commonwealth*, Ky., 751 S.W.2d 28, 31 (1988). The narrative supplied in no way measures up to a grotesque "Poe-like description" as appellant has so characterized it. We uphold the competent ruling of the trial court to admit probative evidence.

Appellant's fourth assignment of error concerns statements he made to investigating officer Detective McDermott while appellant was in the hospital emergency room for injuries he received in the truck accident. He claims that under the circumstances, his inculpatory statements were not given voluntarily. Thus, appellant alleges, the trial court erred in violation of his Fifth and Fourteenth Amendment privilege against self-incrimination when it denied his motion to suppress the statements.

The trial court held a hearing outside of the presence of the jury to hear the testimony of appellant and three police officers who spoke to appellant at the scene of the accident and at the hospital. The police officers testified that appellant was advised of his constitutional rights both in the ambulance on his way to the hospital and upon arriving at the hospital. Officer Hunt stated that appellant was responsive to his questions, indicated that he understood his rights, as well as other things people were saying to him, seemed coherent despite being intoxicated, and was at all times fully conscious. Appellant did not sign a written waiver of his rights.

Appellant had sustained chest injuries and facial bruises and lacerations. At the time of the questioning here at issue, appellant was wearing a cervical collar to which intravenous lines were attached, he was handcuffed, and he had a blood alcohol level of .23. He was not receiving medical treatment simultaneously with the questioning.

Although appellant was initially uncooperative with Detective McDermott when he tried to obtain appellant's name, birthdate and other routine information, McDermott testified that after Officer Hunt spoke with appellant, he was willing to talk. Appellant told McDermott that he was present at the scene of the shooting earlier that evening. He shot some pool at the liquor store and returned to his truck. He denied being in a fight or being asked to leave the liquor store. Appellant said several black men armed with knives approached and began throwing things at the truck. Appellant told McDermott that he did not shoot anyone; in fact, he did not even own a gun. Finally, appellant said he had no more to say, and McDermott ceased his questioning. These are the statements which McDermott was later allowed to repeat in his testimony to the jury. McDermott told the judge that appellant said he had had three or four beers, that he smelled alcohol on appellant, but that appellant seemed lucid.

Before ruling on appellant's motion to suppress, the trial judge reviewed the evidence point by point as it related to the question of appellant's knowing and intelligent waiver of his rights. The judge found

that appellant was in a serious automobile accident but had suffered no loss of consciousness. Arriving at the hospital in handcuffs, appellant was alert with slurred speech. His senses were reported by medical personnel to be deadened by alcohol. The trial court concluded that appellant had been advised of his rights sufficiently close in time to the questioning, and was capable of voluntarily waiving those rights.

Unlike the trial court in *Jones v. Commonwealth*, Ky., 560 S.W.2d 810 (1977), cited by appellant in support of his argument, the trial court in appellant's case held a hearing on voluntariness as required by our decision in *Bradley v. Commonwealth*, Ky., 439 S.W.2d 61 (1969). The trial judge heard and considered all relevant evidence before reaching his decision to deny appellant's motion. The test of voluntariness of the statements appellant made rests on the "totality of the circumstances." *Sampson v. Commonwealth*, Ky., 609 S.W.2d 355 (1980). Relevant factors here include appellant's intoxication, health and physical restraint, and the apparent absence of coercion.

At the hearing, appellant testified that he remembered nothing after the accident. He had no recollection of being advised of his rights or of being questioned by the police officers. When asked by defense counsel if he had told an officer that he did not want to talk and that he had an attorney, appellant responded that he "assumed" he told someone that. He also admitted, however, that he had no reason to dispute the testimony of the police officers that he was responsive to their questions and willing to talk. There was no evidence that appellant's lack of formal education after the eighth grade rendered him intellectually impaired. Although he was in a less than desirable situation as he was questioned in the emergency room, there was sufficient evidence to support the trial court's ruling; thus it was conclusive on the admissibility of appellant's statements. *Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). *Britt v. Commonwealth*, Ky., 512 S.W.2d 496, 499 (1974). We emphasize that the totality of the circumstances test may yield different results in a factually similar case, depending on the interplay of factors to be taken into account. We simply hold that here, in view of the thorough consideration given by the trial court and the nature of appellant's inculpatory statements basically denying involvement in the shooting, the trial court did not err in denying appellant's motion to suppress the statements.

■ Appellant argues in his fifth allegation of error that the trial court improperly refused to grant his motion for mistrial, requested when Sergeant McDermott testified before the jury that at one point appellant had invoked his Fifth Amendment right to remain silent. He contends this alleged error was compounded by the prosecutor's comment during her closing argument, concerning the attempted robbery of appellant, that he never told the police about someone grabbing him through the truck window. Appellant did not object to this comment, but he raises it as an instance of palpable error under RCr 10.26. We reject both parts of appellant's argument.

First, McDermott's comment was given in response to defense counsel's question on re-cross examination about Detective Rutledge's attempt to obtain a statement from appellant at the hospital on the day after the shootings. The comment that appellant had invoked his Fifth Amendment rights followed McDermott's slow and deliberate explanation that Rutledge had *attempted* to speak with appellant to obtain more facts, and that Rutledge had returned and informed McDermott he had been unable to get any further statements. Appellant timely moved for a mistrial. As the trial court observed in denying appellant's motion, defense counsel opened the door by asking the question, he saw or should have seen the objectionable comment coming, and he could have stopped McDermott's testimony. No admonition was requested.

■ This testimony was not in the nature of the comment on silence proscribed in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The comment

complained of followed the examination of three witnesses who testified to appellant's general willingness to talk, as well as to what he told them. If, despite appellant's invitation, or at least passive acceptance of McDermott's testimony, his comment could be characterized as error, it was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ In the last of his partially preserved errors, appellant objects to a number of comments made by the Commonwealth Attorney in her closing argument. Only two such comments merit discussion. First, the prosecutor told the jurors they could not find appellant acted under extreme emotional disturbance in his assault of the victim who was a passerby to the shooting scene, because appellant had not specifically "claimed" in his testimony to have so acted. Sustaining defense counsel's objection, the trial judge admonished the jurors that *they* would determine the facts and apply the instructions. He went on to explain that whether or not appellant "claimed" a defense in his testimony does not determine what the jury can find. We are convinced that the trial court adequately informed the jury on the availability of extreme emotional disturbance as a defense.

■ Second, the Commonwealth Attorney told the jury that appellant had disposed of the gun within twenty minutes of the shootings, thus behaving as would a guilty man. Although he did not object at trial, appellant now contends that there was no testimony on this issue and therefore the prosecutor misstated the facts to the jury. Firearms examiner William McBrayer testified that to his knowledge, the gun had not been recovered. From this information, the Commonwealth Attorney could argue the inference that appellant had disposed of the gun.

■ In his final and unpreserved specific allegation of error, appellant complains that the Commonwealth impermissibly asked him whether he had any justification to shoot any of the victims, to which he replied "None whatsoever." Appellant claims he should not have been asked to testify as to the ultimate issue at trial, that is whether appellant fired the gun in self-defense.

The full context of the question asked and answer given by appellant suggests that he had no reason, independent of the immediate circumstances, to *intentionally* shoot the victims. If there was any doubt about the nature of appellant's response, defense counsel cleared it up when, within a minute of the Commonwealth Attorney's question, he asked appellant on redirect "Never was your intention to shoot anybody that night, was it Charlie?" There is no merit to appellant's claim of palpable error on this issue.

Having reviewed all of appellant's assignments of error to the trial by which he was convicted of wanton murder and two counts of first degree assault, we find none of appellant's arguments individually requires reversal of his conviction. Further, although this Court has considered his assertion that the cumulation of alleged errors denied appellant his due process right to a fair trial, we reject the claim in this particular case. For these reasons, the judgment of the Jefferson Circuit Court is affirmed.

GANT, VANCE and WINTERSHEIMER, JJ., concur.

STEPHENS, C.J., dissents by separate opinion in which COMBS and LEIBSON, JJ., join.

STEPHENS, Chief Justice, dissenting.

Respectfully, I dissent.

Appellant was denied his due process right to a fair trial due to a number of trial errors: allowing the expert witness to testify outside the confines of his report, permitting the Commonwealth to introduce knives not used in the incident charged, and allowing the jury to hear a nonresponsive statement by a police officer that appellant had invoked his fifth amendment right to remain silent. Errors that might not be so prejudicial as to amount to a deprivation of due process when considered

alone may cumulatively produce a trial setting that is fundamentally unfair. *Walker v. Engle*, 703 F.2d 959 (6th Cir.1983); *see also Peters v. Commonwealth*, Ky., 477 S.W.2d 154 (1972).

On the basis of cumulative error, I would reverse appellant's conviction and grant him a full, new trial.

COMBS and LEIBSON, JJ., join in this dissenting opinion.