Garland PACE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Supreme Court of Kentucky.

Aug. 31, 1982.

Jack E. Farley, Public Advocate, Larry H. Marshall, Asst. Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Gerald Henry, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

On January 20, 1981, appellant Garland Pace was indicted by the Harlan County Grand Jury for the offenses of:

Count 1—Murder (KRS 507.020);

Count 2—First-degree assault (KRS 508.-010);

Count 3—First-degree assault (KRS 508.-010); and

Count 4—Persistent felony offender in the second degree (KRS 532.080).

After a five-day trial appellant was found guilty under Count 1 of second-degree manslaughter and sentenced to ten years' imprisonment, found guilty under Count 2 of first-degree assault and sentenced to ten years' imprisonment, found guilty under Count 3 of third-degree assault and sentenced to 12 months' imprisonment and a $100 fine, and found guilty under Count 4 of being a persistent felony offender and sentenced to 15 years' imprisonment.

On January 3, 1981, William Woodrow King, Bobby Jack King and Billy Joe King, brothers, at about 6:45 p. m., were walking from Kenvir, Kentucky, toward Evarts, Kentucky, on the shoulder of the road. At a point designated in the record as "Red Bud ball diamond," an automobile driven by appellant ran into the three King brothers and ended up in a ditch on the left side of

the road. William was killed and the other two men were injured. Appellant's alibi defense was that he got home on the day of the accident at about 6:00 p. m. in a falling-down drunken condition and did not leave the house until the following day.

■ Appellant charges that the trial court erred in permitting the Commonwealth's Attorney to cross-examine him in an improper manner. The interrogation of appellant by the Commonwealth's Attorney implied the existence of a factual predicate which he could not or did not support by evidence. The prosecuting attorney questioned appellant as to the time of day he left home after asking his wife for $20. The record at no point reveals any facts that support the prosecutor's interrogation relative to appellant's leaving home at 6:00 or 6:30 p. m. Upon a retrial the prosecuting attorney should be prepared to substantiate such factual implications with evidence in the record.

Appellant argues that due to the improper cross-examination and attempted impeachment of Brenda, his wife, as to appellant's cutting her with a butcherknife, he was denied due process of law. In *Darnell v. Commonwealth*, Ky., 558 S.W.2d 590 (1977), we wrote: "The prosecution has the right to cross-examine a witness as to inconsistent statements in a prior proceeding in order to impeach his credibility."

■ Brenda appeared before the grand jury and testified that appellant cut her with a butcherknife and that she was scared to death of him. On cross-examination by the Commonwealth's Attorney during the guilt phase of the trial, Brenda stated that she was not afraid of appellant. She was one of appellant's witnesses to substantiate his alibi defense. Regardless of whether Brenda was the complaining party, her testimony was subject to challenge. The trial judge did not err in permitting the subject interrogation.

■ Appellant argues that the trial court erred when it allowed the Commonwealth to introduce a prior inconsistent statement of his mother since no proper foundation had been laid. The Commonwealth concedes that no proper foundation had been laid. However, the Commonwealth argues that the error was not prejudicial.

Appellant's whole case rests upon his alibi defense, that at the time of the incident he was at home in a passed-out drunken condition. One of his key witnesses to help build this defense was his mother. In *Abernathy v. Commonwealth*, Ky., 439 S.W.2d 949 (1969), in discussing substantial rights, we said:

"... What it really boils down to is that if upon a consideration of the whole case this court does not believe there is a substantial possibility that the result would have been any different, the irregularity will be held nonprejudicial."

After considering this issue in the context of the facts in the case at bar, we cannot say that the impeachment of appellant's mother by a prior inconsistent statement, in violation of the well-established foundation requirement, had a nonprejudicial effect. We find that there is a substantial possibility that the result could have been different had the error not been made. A review of the evidence and the circumstances of this case discloses that the trial court erred to appellant's substantial prejudice, by reason of which the judgment of the trial court must be reversed.

The issue is posed as to whether the jury verdicts were inconsistent in law and in fact on the charged offenses. Appellant's basic contention is that the jury verdicts contained possible inconsistencies. The jury returned guilty verdicts on two wanton crimes—second-degree manslaughter of Woodrow King and second-degree assault of Bobby King—and a guilty verdict on third-degree assault, which under the in-

struction given could have been either a reckless or a wanton crime.

■ In *Wells v. Commonwealth*, Ky., 561 S.W.2d 85 (1978), we held that due process does not require the jury to indicate upon what mental state it based its guilty verdict. In the instant case, however, the jury was given a full, wide range of instructions encompassing all possible mental states for the crimes established by the evidence. On two of these, the jury returned a verdict on instructions requiring a wanton mental state; on the third the jury could have found either a wanton or a reckless state of mind to convict the appellant of third-degree assault. If a reckless state of mind were found, the logical inconsistency is established since the injury to all three victims occurred simultaneously. Appellant could not have acted wantonly with regard to two of the brothers and recklessly with regard to the third one. This situation differs from that in *Wells* cited by the Commonwealth since the wanton mental state found under two of the instructions resulted in a more severe punishment. Upon a retrial instructions should be fashioned that will avoid such an inconsistency.

The fifth and sixth issues presented by appellant deal with the sufficiency of the proof in the persistent felony offender phase of the case to sustain the verdict of the jury. The reversal of the underlying offense necessarily reverses the persistent felony offender conviction as well.

Two of the issues deal with the alleged inadequacy of proof of two of the elements necessary for a persistent felony offender conviction (age—discharge from parole). We find it unnecessary to discuss these issues other than to suggest that upon a retrial of a persistent felony offender phase of the case, the quality of the proof should be carefully weighed before submitting this issue to the jury.

■ Appellant next charges that the Commonwealth's Attorney introduced inflammatory and irrelevant evidence during the persistent felony offender phase of the trial. The first witness to testify for the Commonwealth not only testified that appellant had been convicted of involuntary manslaughter in 1976, but he went on to explain the gruesome facts pertaining to the prior felonies. Such evidence has repeatedly been held inadmissible by this court. *Berning v. Commonwealth*, Ky., 565 S.W.2d 443 (1978); *Hardin v. Commonwealth*, Ky., 573 S.W.2d 657 (1978). The trial court, however, admonished the jury to disregard the statement as to the circumstances of the death of the person which led to his conviction and which constituted the underlying conviction in the instant case. Furthermore, during the persistent felony offender phase of the action, the Commonwealth introduced the jacket that appellant was wearing when he was arrested for the underlying offense. Such evidence is clearly irrelevant and should not have been permitted. The Commonwealth should bear in mind the purpose of the persistent felony offender stage of the bifurcated trial. In order to establish a persistent felony offender status, the Commonwealth merely needs to establish a simple check list of technical statutory requirements. The evidence concerning the jacket has no place in a persistent felony offender proceeding. Such evidence can only serve to lengthen what is intended to be a quick and simple procedure and to inflame the jury.

■ Finally, we need to consider the sentences imposed. We reiterate our ruling in *Covington v. Commonwealth*, Ky., 481 S.W.2d 62 (1972), wherein we stated:

"The appellant alleges error in the judgment in imposing sentences for the two principal offenses in addition to the habitual-criminal sentence. The judgment is in error in that regard, for the rule is that if the jury finds the defendant guilty of the principal offense and of

the previous convictions, only the penalty prescribed by the habitual-criminal statute shall be imposed and not the penalty for the principal offense...."

Thus, any attempt to run the persistent felony offender conviction either concurrently with or consecutively to the underlying offense on which it is based (here, the manslaughter conviction under Count 1) is improper.

The judgment of the Harlan Circuit Court is reversed and the case is remanded for a new trial consistent with this opinion.

All concur.