Mark CUZICK, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2007–SC–000466–MR.

Supreme Court of Kentucky.

Jan. 22, 2009.

Euva D. May, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, David Bryan Abner, Assistant Attorney General, Office of the Attorney General, Office of the Criminal Appeals, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Mark Cuzick, was convicted by a Jessamine County jury of first-degree fleeing and evading, resisting arrest, operating a motor vehicle under the influence, and of being a persistent felony offender. For these crimes, Appellant was sentenced to twenty (20) years imprisonment. He now appeals his judgment and conviction as a matter of right, pursuant to Ky. Const. § 110(2)(b).

Appellant raises four principal allegations of error in the underlying proceeding, to wit: 1) that impermissible testimony was introduced during the sentencing phase of trial; 2) the trial court erroneously permitted narrative testimony to accompany the videos of the police chase; 3) the introduction of the two police chase videos

was cumulative and substantially prejudiced Appellant; and 4) the Commonwealth was impermissibly allowed to define reasonable doubt during voir dire. For the following reasons, we find Appellant's arguments unpersuasive and, thus, affirm the trial court's convictions and sentence.

## I.  BACKGROUND

Nicholasville police officer Bradley Sapp was driving in a marked police car on December 16, 2006, when he observed Appellant's car turn south into a northbound lane of traffic, driving the wrong direction. The car came directly at Sapp who veered into the opposite lane to avoid it. Sapp, who was off-duty at the time, turned on his lights, turned on the in-car camera, and began pursuit of Appellant.

Sapp caught up with Appellant, who stopped while still facing against oncoming traffic, and pulled behind him. As Sapp exited his vehicle and began to approach Appellant's car, Appellant sped away into oncoming traffic. Sapp resumed pursuit, traveling parallel to Appellant in the correct lane and with a spotlight trained on Appellant's car.

Officer Jason Faddasio and Corporal Michael Fleming responded to Sapp's radio request for assistance. As Fleming arrived in the vicinity, he saw Appellant driving toward him in the wrong lane. Appellant then cut across a steep grass median. All three patrol cars fell in line in a high-speed chase of Appellant. The pursuit continued for approximately three to four miles and reached speeds in excess of eighty-five (85) miles per hour, during which time Appellant was driving erratically and weaving from side to side.

Sapp attempted to execute a "rolling roadblock" maneuver on Appellant, where-by he positioned his cruiser in front of Appellant and applied the brakes, attempting to slow his vehicle. Appellant, however, veered around Sapp and sped past.

Appellant's automobile eventually began to smoke from beneath the hood, whereupon he coasted to a halt at a red light in the emergency lane. The three officers then exited their cars with guns drawn and approached Appellant's car, ordering him to exit the vehicle. Appellant was on his cell phone at the time and ignored the officers' orders. They ordered Appellant to exit the vehicle three to four more times, and when he would not comply, the officers forcibly removed him from the car.[1] While they were doing so, the officers noticed a strong smell of alcohol. Appellant continued to resist the officers, struggling with them on the ground as they attempted to handcuff him.

Appellant was subsequently arrested, charged and tried by a Jessamine County jury. He was found guilty of fleeing/evading police, resisting arrest, driving under the influence and of being a first-degree persistent felony offender, and sentenced to twenty (20) years imprisonment.

## II.  ANALYSIS

### A.  Evidence of Prior Burglary Conviction Did Not Exceed Scope of Truth in Sentencing Statute.

In his first allegation of error, Appellant argues that the trial court erred by allowing the Commonwealth to read to the jury, from a 1993 uniform citation, the substance of a prior burglary conviction. Appellant claims that by reading the description of the offense, and in particular mentioning that Appellant used a baseball bat to break the glass on the front door of a commercial building to gain entry, the Commonwealth

---

1.  It should be noted that although Appellant was nearly deaf and relied on a hearing aid to hear, after officers first ordered him to exit he responded, "I just want to call somebody."

exceeded the scope of KRS 532.055. Appellant further alleges that this information infringed upon his due process rights and necessitates a new sentencing hearing. We disagree for reasons that the testimony was merely a general description of the nature of the prior crime, as permitted by the statute.

During his sentencing phase, the Commonwealth introduced a 1993 uniform citation, among others, as a penalty phase exhibit for the purposes of establishing Appellant as a persistent felony offender. In so doing, the Commonwealth read the following from the citation: "1993 burglary third. Fayette County. Subject utilized a baseball bat. Broke the glass of the front door of Autosound in Lexington and took several items of value. Used force to enter a business and steal from that business." Appellant argues that by disclosing this information, the Commonwealth went beyond describing the "nature" of the offense as permitted in KRS 532.055.

■ KRS 532.055(2)(a)(2) allows the Commonwealth to introduce relevant evidence of "[t]he nature of prior offenses for which he was convicted" during sentencing. This Court has held that the type of evidence which may be admitted during the persistent felony offender stage of a bifurcated trial should serve to establish the elements necessary for demonstrating the statutory requirements of being a persistent felony offender. *Pace v. Commonwealth*, 636 S.W.2d 887, 890 (Ky.1982) *(overruled on other grounds by Commonwealth v. Harrell*, 3 S.W.3d 349 (Ky.1999)).

We have routinely noted that the Commonwealth's Truth in Sentencing statute has the overriding purpose of providing the jury with information relevant to delivering an appropriate sentence. *See, e.g. Williams v. Commonwealth*, 810 S.W.2d 511, 513 (Ky.1991). In that vein, we have held that, generally, this goal can be accomplished while limiting the description of the "nature of a prior conviction" to a "general description of the crime." *Robinson v. Commonwealth*, 926 S.W.2d 853, 855 (Ky.1996).

In *Robinson*, the Court, by way of demonstration, points to *Williams* "[a]s an example of the type of evidence that would be admissible . . . [and] would be the right type of evidence" for demonstrating the "nature" of the prior offense. *Robinson*, 926 S.W.2d at 855.[2] *Robinson* notes that in *Williams*, the defendant "was asked during sentencing whether he had been convicted of 'beating [his] wife up.' " *Id.* *(quoting Williams*, 810 S.W.2d at 513). In what *Robinson* termed a proper example, the "prosecutor then *read the complaint to the jury.*" *Id.* (emphasis added). This is no different than the prosecutor reading from the citation that Appellant, here, used a bat to break in the glass of a business's door.

Rejecting the proposition of establishing a bright line rule as to what the permissible limits of a "general description" should be, we have held that excessive and protracted testimony which attempts to retry the prior crimes will not be allowed. *See id.* at 854–855 (finding error where the victim of a prior crime was permitted to testify extensively and at length concerning her injuries and the circumstances surrounding the crime); *see also Pace*, 636 S.W.2d at 890 (finding error when Commonwealth introduced extensive testimony and "gruesome facts" about prior felonies and also introduced irrelevant physical evidence during sentencing); *Hudson v.*

---

**2.** For purposes of determining what "nature" means, *Robinson* announces, "[w]e will look to the definition of 'nature' found in *Black's Law Dictionary*, 1027 (6th ed.1990): 'kind, sort, type, order; general character.' Nature, then, is more generic than specific." *Id.*

*Commonwealth,* 979 S.W.2d 106, 110 (Ky. 1998) (finding error when testimony elicited went beyond a reading of convictions, dates, and sentences and went into factual testimony obtained from warrants, etc., going beyond the nature of the conviction as set forth in *Robinson*); but see *Brooks v. Commonwealth,* 114 S.W.3d 818, 824–825 (Ky.2003) (permitting admission of records such as a criminal complaint pertaining to misdemeanor convictions and testimony of parole officer during sentencing).

Given this Court's endorsement of the theory of an enlightened and well-informed jury in evaluating proper penalties, *Mabe v. Commonwealth,* 884 S.W.2d 668, 672 (Ky.1994), and the General Assembly's intent in ensuring an enlightened jury through KRS 532.055, the Truth in Sentencing statute, *Boone v. Commonwealth,* 780 S.W.2d 615, 616 (Ky.1989) (*quoting Commonwealth v. Reneer,* 734 S.W.2d 794, 797 (Ky.1987)), it would seem both counterproductive and illogical to hold that *any* recitation of facts from the offense is disallowed in describing the general nature of the prior crime. Here, the Commonwealth's description of the nature of the prior offense was limited solely to the information contained on the citation, namely that Appellant utilized a bat to commit the breaking aspect of the burglary. We do not believe such information runs afoul of even the most stringent and limited interpretations of our intent to keep prior convictions from being retried during the penalty phase.

As a cautionary note we add that, by upholding the admissibility of the information contained on the citation in this case, we do not create a rule that the contents of a citation or other charging document are always admissible during penalty phase. We know that such documents may contain inaccurate or misleading information, as well as information inconsistent with the final judgment. So long as the information is limited to a fair, accurate and general description of the nature of the prior offense, it comports with KRS 532.055 and may be considered by the jury. Here, the testimony merely served to provide a general description of the nature of the prior offense as permitted by KRS 532.055(2)(a)(2). *See Robinson,* 926 S.W.2d at 855.

Contrary to the dissent's assertion, *Hudson* does not announce a bright line rule and we have no intention of overruling any part of it. Indeed, this Court has consistently rejected formulating a bright line rule, opting instead for the more workable flexibility of the rule announced in *Robinson,* which is that it is permissible to offer a general description of the nature of the prior conviction.

Nor, as the dissent suggests, does *Hudson* offer up a blanket prohibition of reading from warrants or citations. In fact, all that is clear from the very scant description of the offending testimony in that instance is that it "was clearly beyond the limitation set forth in *Robinson.*" *Hudson,* 979 S.W.2d at 110. *Hudson* plainly defers to the rule announced in *Robinson* and so shall we here. There was no error.

### B. Narration of the Police Chase Videos.

Appellant's next argument, which is unpreserved, is that the trial court should not have allowed two police officers to narrate videos played during their trial testimony—the substance of the videos having been captured from cameras mounted in their cruisers depicting the highspeed pursuit of Appellant as he attempted to flee. Appellant alleges that by supplementing the playing of the video tapes at court with narrative testimony his due process rights were denied and thus his conviction must be reversed. We disagree.

At trial, police officer Michael Fleming was called as a witness to testify. During his testimony, a video was played showing the pursuit of Appellant as he attempted to flee from officers after being stopped. In large part, Fleming's testimony consisted of narrative responses to the Commonwealth's questions, with the purpose of describing the images on the video from his perspective as they happened. Additionally, Fleming answered questions concerning the location of the chase, what various symbols which appeared on the cruiser's in-car camera meant, and what procedures the officer was employing to stop Appellant's vehicle.

Likewise, Officer Bradley Sapp testified in much the same manner. However, the focus of Sapp's testimony was from the perspective of the video obtained from his cruiser's camera and events relevant to his pursuit. The substance of his testimony highlighted a bumper to bumper incident, which was not on the video tape, and followed a similar question and answer format describing the events taking place on the video. It is significant to note, however, that every statement by both Fleming and Sapp was in direct response to a question asked by the Commonwealth and was describing the actions as they perceived them at the time of the chase.

Appellant points out that no Kentucky case law directly addresses whether an officer can narrate audible video tapes. However, we find that this Court's prior rulings concerning crime scene videos and inaudible tapes lend guidance to the issue.

In *Mills v. Commonwealth,* 996 S.W.2d 473 (Ky.1999), we addressed the issue of whether a police officer's narrative testimony during the playing of a crime scene video was improper lay testimony. We determined, in *Mills,* that the proper query for such narrative testimony was whether it complied with KRE 701 and KRE 602. KRE 701 limits testimony by a witness not testifying as an expert to matters "(a) [r]ationally based on the perception of the witness," and "(b) [h]elpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Moreover, KRE 602 further refines the scope of permissible lay opinion testimony, limiting it to matters of which the witness has personal knowledge. Thus, reading these two requirements in conjunction, we determined that the narration of the video was proper because it "comprised opinions and inferences that were rationally based on [the officer's] own perceptions of which he had personal knowledge" and "was helpful to the jury in evaluating the images displayed on the videotape." *Mills,* 996 S.W.2d at 488.

Additionally, we have allowed narrative testimony from in court witnesses providing "simultaneous commentary" of crime scene video, *see Milburn v. Commonwealth,* 788 S.W.2d 253, 257 (Ky.1989), whereas we have found error in pre-recorded narrative video when such narration contained inadmissible hearsay. *See Fields v. Commonwealth,* 12 S.W.3d 275, 280 (Ky.2000). Thus, the common thread uniting our decisions on narrative-style testimony of audio and video evidence is that such testimony, like any other, must comport with the rules of evidence.

Therefore, the fulcrum of the matter upon which this issue turns, is whether the witness has testified from personal knowledge and rational observation of events perceived and whether such information is helpful to the jury. In short, does the testimony comply with the rules of evidence? While a witness may proffer narrative testimony within the permissible confines of the rules of evidence, we have held he may not "interpret" audio or video evidence, as such testimony invades the province of the jury, whose job is to make

determinations of fact based upon the evidence. *See Gordon v. Commonwealth,* 916 S.W.2d 176, 180 (Ky.1995) (finding error when witness was allowed to offer testimony interpreting a poor quality audio tape of an undercover drug buy that was substantially inaudible, rather than simply testifying as to his recollection).

■ Turning to the complained-of testimony at hand, Appellant has made no specific protest as to any particular portions of Officer Fleming or Officer Sapp's testimony. Here, the videos in question depicted the substance of a high-speed police chase, as captured from the in-car cameras. It is completely reasonable to conclude that the officers' testimony was not only beneficial to the jury in discerning what was happening on the video, but was in all likelihood necessary. *See Mills,* 996 S.W.2d at 488. Moreover, and importantly, the officers' testimony did not interpret the video. *Cf. Gordon,* 916 S.W.2d at 180. While the testimony was narrative in the sense that it sequentially followed the chronology of the tape, all statements were responsive in nature and were in answer to the Commonwealth's questions. Narrative testimony is not necessarily interpretive testimony *per se.* Here, the testimony was explicative of the officers' perception of the events occurring on the video as they perceived them during the police chase and provided further elucidation of matters of police procedure, etc., which were not readily identifiable from the video standing on its own. Thus, having reviewed the record and determined that the testimony was proper lay opinion testimony which was beneficial to the jury, we find no palpable error.

### C. Admission of the Police Chase Videos Was Not Cumulative or Prejudicial.

Appellant next argues, for the first time on appeal, that in playing both police chase videos at trial, the trial court committed reversible error, as the videos were cumulative and caused undue delay. Because, as we have already noted, we believe that the videos and accompanying testimony were germane to the Commonwealth's pursuit of its prosecution and, thus, were neither cumulative nor overly prejudicial, and for reasons that Appellant did not object to the presentation of the videos at trial, we find no palpable error under RCr 10.26.

■ Appellant claims that playing both police chase videos did nothing more than "pile on" duplicative evidence. We disagree. Here, Officer Sapp was the lead car in the high speed pursuit of Appellant. Thus, the images captured from his camera highlight critical information and detail pertinent to the crimes charged. Likewise, the video obtained from Officer Fleming's car contained footage capturing maneuvers attempted by Officer Sapp, and other information uniquely available from the perspective of the last car in the pack chasing Appellant. Further, during the period of time in which Sapp's car was in front of Appellant's car, Fleming's video is the only one depicting the pursuit.

■ Determinations as to the admission and exclusion of evidence are a matter of trial court discretion. *Woodard v. Commonwealth,* 147 S.W.3d 63, 67 (Ky.2004). Upon review, we will not overturn a trial judge's evidentiary determinations unless his decision was "arbitrary, unreasonable, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

■ In conducting the KRE 403 balancing test, trial judges are afforded substantial discretion. *See Brock v. Commonwealth,* 947 S.W.2d 24, 29 (Ky.1997). Here, as noted, the videos were relevant

and the trial judge, as was his legal prerogative, determined that their probative value outweighed any concerns of cumulative evidence or undue delay. *See* KRE 401; KRE 403. Because Appellant points to no specific harm suffered from the presentation of the videos—other than a hollow argument asserting prejudice since Appellant received the maximum sentence—and because we can find nothing in the record, or otherwise, to indicate that the trial judge's determination was an abuse of discretion, arbitrary or unsupported by sound legal principles, we cannot find palpable error where none exists.

## D. Defining Reasonable Doubt.

Lastly, Appellant argues that the Commonwealth impermissibly defined reasonable doubt during the selection of the jury. As with Appellant's prior arguments, this issue is unpreserved and will be reviewed under the palpable error standard, RCr 10.26. Again, Appellant alleges that his conviction should be reversed. We disagree.

During voir dire, the Commonwealth addressed the jury in the following manner:

> We have to prove our case beyond a reasonable doubt. So in order to get a conviction, we have to prove each and every element of each and every charged offense beyond a reasonable doubt. Now, would you all as jurors agree to hold us to that burden and that burden only? To make us prove our case beyond a reasonable doubt and not beyond all shadow of a doubt or not by a mathematical certainty?

█ RCr 9.56 sets forth the proposition that the jury should not be instructed as to the definition of reasonable doubt. In *Commonwealth v. Callahan*, 675 S.W.2d 391, 393 (Ky.1984), this Court extended this well-settled prohibition of defining reasonable doubt to all points in a trial's

proceedings. In *Johnson v. Commonwealth*, 184 S.W.3d 544, 549–550 (Ky.2005), we reexamined *Callahan*'s prohibition of defining reasonable doubt and determined, under the facts in that instance wherein the Commonwealth attempted to indicate what reasonable doubt was not, error, if any existed, was harmless.

The Commonwealth, in *Johnson*, 184 S.W.3d at 548–549, indicated to the jury in a colloquy during voir dire that reasonable doubt was not the same thing as "beyond a shadow of a doubt," and that the prosecution did not have to prove anything beyond a shadow of a doubt. To that end, we recognized, "in the very case that announced the prohibition against defining reasonable doubt [*Callahan*], we held that the prosecutor's allegedly improper statement, which, at most, attempted to show what reasonable doubt was *not*, did not amount to a violation of the rule against defining 'reasonable doubt.'" *Johnson*, 184 S.W.3d at 549. (emphasis in original).

More significantly, however, *Johnson* squarely addressed whether alleged impermissible attempts to define reasonable doubt could be subject to harmless error analysis. Appellant now argues that such error can never be harmless. However, this Court's pronouncement in *Johnson*, in that regard, was clear: while we fundamentally upheld our prior decisions in *Callahan* and its progeny, we rejected the notion that any such error in defining reasonable doubt was *per se* prejudicial and not subject to harmless error analysis. *See id.* at 550–551. "[E]ven if one is convinced that the statement by the prosecutor in this case constituted error, that error was harmless. We have applied harmless error on this precise issue, even in capital murder cases, each time affirming a conviction and sentence of death." *Id.* at 550; *see also Sanders v. Commonwealth*, 801 S.W.2d 665, 671 (Ky.1990);

*Caudill v. Commonwealth,* 120 S.W.3d 635 (Ky.2003); *Howell v. Commonwealth,* 163 S.W.3d 442, 447 (Ky.2005).

Thus, despite Appellant's contention that a violation of *Callahan* should not be subject to harmless error analysis (and *Johnson* should be overruled), we are unpersuaded. Appellant offers no legitimate argument for this conclusion and merely cites to Justice Cooper's dissent for this proposition. However, a majority of the Court considered Justice Cooper's well-reasoned argument at that time and concluded otherwise. We would be remiss to so freely ignore the doctrine of *stare decisis* and reach a contrary decision here today.

Turning to the complained of statement at hand, it must be noted that Appellant's claim of error is unpreserved. Even Justice Cooper, in his dissent, was quick to draw a distinction between preserved and unpreserved error as it pertained to alleged attempts at defining reasonable doubt. *See Johnson,* 184 S.W.3d at 555 (Cooper, J., dissenting). ("Unlike the case *sub judice,* there was not a contemporaneous objection to the prosecutor's discussion of the meaning of reasonable doubt in either *Caudill* or *Sanders.*"). Indeed, we have recently held that a prosecutor's comment that "beyond a reasonable doubt was not equivalent to beyond all doubt" did not rise to palpable error. *Brooks v. Commonwealth,* 217 S.W.3d 219, 225 (Ky.2007); *see also Rice v. Commonwealth,* No. 2004–SC–1076–MR, 2006 WL 436123, at *7 (Ky. Feb.23, 2006) ("Truthfully pointing out that a 'shadow of doubt' is different from 'beyond a reasonable doubt' is not an attempt to define reasonable doubt. Using examples, however, to point out what is, or is not, reasonable doubt, is."). Thus, we find no palpable error here.

## III. CONCLUSION

Accordingly, for the foregoing reasons, we hereby affirm Appellant's conviction and sentence.

All sitting. VENTERS, J., concurs. CUNNINGHAM, J., concurs in result only by separate opinion, with SCHRODER, J., joining that opinion. NOBLE, J., concurs in part and dissents in part by separate opinion, with MINTON C.J.; and ABRAMSON, J., joining that opinion.

Opinion by Justice CUNNINGHAM, concurring in result only.

I concur in Justice Scott's very well-written opinion, but share the concerns expressed in the dissent of Justice Noble. As Justice Scott points out, neither *Hudson* nor *Robinson* establish a bright line rule as to what can be included in describing the "nature" of a previous conviction. These cases make clear, however, that there is a limit and, accordingly, prosecutors should tread lightly. I simply do not believe that describing a burglary as forced entry while using a baseball bat crosses the line as to be prejudicial. When considering a burglary offense, the jury could certainly imagine a much more menacing means of forced entry which might make the use of a common baseball bat comparatively innocuous. Any deviation from *Hudson* and *Robinson* which may have occurred here, if error, was harmless.

SCHRODER, J., joins this opinion.

Opinion by Justice NOBLE, concurring in part and dissenting in part.

Respectfully, I dissent with the majority view that it was appropriate to read the contents of the citation, which stated "1993 burglary third. Fayette County. Subject utilized a baseball bat. Broke the glass of the front door of Autosound in Lexington

and took several items of value. Used force to enter a business and steal from that business." This statement goes far beyond what this Court has previously held to be acceptable when listing prior convictions in truth in sentencing. Specifically, in *Hudson v. Commonwealth*, 979 S.W.2d 106 (Ky.1998), a case which cites *Robinson v. Commonwealth*, 926 S.W.2d 853 (Ky.1996), this Court held as follows: "In addition to reading the convictions, dates, and sentences, the supervisor read information regarding the factual circumstances of each conviction from the warrants or uniform citations. The amount of information heard by the jury was clearly beyond the limitation set forth in *Robinson*, and therefore, should not have been admitted." That was exactly the case here. Then, as now, the witness did nothing more than read the entire warrants or citations.

In *Robinson*, this Court noted that the purpose of truth in sentencing in regard to a persistent felony offender (PFO) conviction was simply to inform the jury that the defendant had prior convictions, and what their general nature was, so that the jury could determine whether the defendant had the status of a persistent felon. In making this rule, the Court balanced the unduly prejudicial nature of detailing previous offenses with the information necessary to obtain a PFO conviction. Since PFO is a status which allows for the enhancement of the sentence in a case that has just been tried, the Court was acutely aware that how the prior offenses occurred was not information necessary to the determination that they had occurred, and that those details could result in punishment aimed at those offenses rather than in merely establishing a status. The Court determined that merely stating the general nature of the offenses would suffice to allow the jury to fix the penalty within the appropriate enhanced penalty range without potential inflammatory influence. Thus, it has been the law in Kentucky for the last ten years that it is inappropriate to read the entire contents of a warrant or citation to the jury during the sentencing phase.

Without explicitly saying it, the majority is essentially overruling *Hudson* and is inviting this kind of testimony henceforth. The majority's view is that what was read is truthful, and was limited solely to the information contained on the citation. This, however, is precisely what *Hudson* forbids. Based on this, how can a witness guess when he or she has read too much? The majority blurs what was previously a bright line rule.

Appellant was drunk and ran away from the police. He was obviously a risk to other drivers, pedestrians, and property. However, his underlying offenses carry a maximum sentence of five years. The jury decided to sentence him to the maximum sentence possible under the PFO First enhancement, twenty years. It is certainly arguable that the implied violence of using a baseball bat to knock in the door of a local business, a business which may have employed some of the jurors or at the very least been known to the others, since it was not disclosed in voir dire, could have inflamed the jury. This kind of potential prejudice would have been avoided if the conviction and sentence for burglary was all that was read to the jury, which is all a plain reading of *Hudson* allows.

Consequently, I would reverse and remand for a new sentencing hearing as this Court did in *Hudson*.

MINTON, C.J.; ABRAMSON, J., join this opinion, concurring in part and dissenting in part.