RENDERED: JANUARY 22, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1456-MR

JOEY LYNN SMITH                                                     APPELLANT

|       | APPEAL FROM HARDIN CIRCUIT COURT |
|-------|----------------------------------|
| v.    | HONORABLE KELLY MARK EASTON, JUDGE |
|       | ACTION NO. 18-CR-01276           |

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, DIXON, AND TAYLOR, JUDGES.

DIXON, JUDGE: Joey Lynn Smith appeals her conviction and sentence of

robbery in the first degree[1] entered by the Hardin Circuit Court on September 19,

2019. Having reviewed the briefs, the record, and the law, we affirm.

---

[1] Kentucky Revised Statutes (KRS) 515.020.

## FACTS AND PROCEDURAL BACKGROUND

On October 25, 2018, Smith; her paramour, Michael Moody; and his brother drove from Nelson County, Kentucky, to the mall in Elizabethtown. Smith entered Belk, a department store, while Moody and his brother initially remained in the van. The manager of Belk saw Smith and recognized her from the week prior when Smith, accompanied by Moody, had attempted to shoplift from the store. The manager apprised Rowe, who worked in loss prevention, of Smith's history.

Rowe proceeded to surveil Smith while she shopped and at one point saw Moody separately in the store. Rowe's surveillance did not go unnoticed. A customer, Richardson, saw Rowe, whom she described as a "sketchy looking guy," lurking behind racks watching Smith. Richardson, unsure if Rowe was loss prevention or a possible stalker, sought and received confirmation of his legitimacy from store staff.

Meanwhile, Rowe observed Smith leave a fitting room with her purse and a tote bag belonging to the store, both filled with merchandise. Smith proceeded toward the store exit—two sets of glass doors separated by a vestibule. Rowe alerted the manager that he was going to make a stop, made visible his staff identification badge, and pursued Smith.

Smith passed the checkout counters and reached the interior set of doors when Rowe confronted her, announced that he was security, and asked her to stop. Smith sped up and continued through the first set of doors to the vestibule. Rowe again announced that he was security and asked her to stop. Smith attempted to proceed out the exterior doors, but Rowe grabbed her shirt. The two then struggled off and on for approximately five minutes. At periods, Smith would calm, and Rowe would release her, only for her to attempt to flee again. Smith yelled to be let go and attempted to headbutt, bite, and elbow Rowe. Rowe was elbowed in the ribs and had his left hand cut open while holding Smith's arms to restrain her. Smith's purse and the tote bag fell to the floor.

While the struggle was ongoing, Moody, who testified he had only entered the store to locate Smith, left the store from a different exit. He further testified that while walking to the van, he heard Smith screaming from the store behind him. Moody got in the van, drove to the doors where Smith was being restrained, and exited the van. Before entering the store, Moody encountered Richardson who advised him that he should not enter as the police were on their way. In response, Moody backpedaled to the van and retrieved a handgun belonging to Smith.

Armed, Moody entered the vestibule of the store where Rowe had his back to the entrance and Smith was against the wall. Moody chambered a round,

pointed the gun at Rowe, and told him to release Smith. Rowe immediately complied. Moody told Smith to get her stuff and go. Smith took her purse, abandoning the tote bag. Moody and Smith left the store, got in the van, sped to another exit of the mall to pick up Moody's brother, and then fled with the van door still open.

The police promptly stopped the van, and Moody and Smith were arrested. Moody's brother was not present, having been dropped off by Moody prior to the stop. Moody testified he told his brother to go because the brother was innocent of any wrongdoing. The Belk merchandise and a handgun were found in the van. When police asked Moody if he knew Smith was shoplifting, Moody stated that he did and indicated the reason he acted was to help Smith.

At the trial, Moody qualified these statements by testifying that he only learned of Smith's shoplifting after they left Belk, denying that they had jointly planned to steal from Belk, and explaining that his only intent was to protect Smith from what he perceived to be an attack by Rowe. Moody further testified he fled the scene because he was a felon and knew it was illegal for him to possess a firearm. Smith did not testify at trial.

After hearing the testimony, reviewing the video surveillance, and listening to the police dispatch calls placed by the manager and Richardson, the jury found both Smith and Moody guilty of robbery in the first degree. Smith was

-4-

convicted and sentenced to ten years' imprisonment by the Hardin Circuit Court. This appeal followed.[2] Additional facts will be introduced as they become relevant.

## ANALYSIS

Smith raises three claims: (1) the court erred in admitting evidence of the prior shoplifting incident; (2) the Commonwealth improperly defined reasonable doubt during voir dire; and (3) the court erred in denying Smith's directed verdict motion. We will address each claim in turn.

### Admission of Evidence

Pursuant to KRE[3] 404(b), the trial court permitted admission of evidence that Smith and Moody had been to Belk the week prior to October 25, 2018, at which time Smith was observed shoplifting. This evidence was primarily introduced through the testimony of the manager who further stated that, after providing Smith with great customer service, she observed Smith remove merchandise from her purse and then meet up with Moody by the exit. The manager explained that she did not stop Smith and Moody or report the incident to police because, without confirmation by loss prevention, such actions violate store

---

[2] Moody did not appeal his conviction. Any reference to him in this opinion is for the sake of clarity only.

[3] Kentucky Rules of Evidence.

-5-

policy. The allegations that Smith and Moody had attempted to shoplift previously were also briefly repeated in the manager's police dispatch call which was played for the jury.

Immediately following the manager's testimony, the trial court admonished the jury as to how the prior bad act evidence could and could not be used. The trial court informed the jury that prior acts could not be used as character evidence to predict what a person would do at a later date. The jury was further instructed to consider the evidence only to the extent that it showed, if indeed it did, "a motive, intent, preparation, a plan, or knowledge of the defendants relating to their actions on October 25, 2018." Video ROA,[4] 6/24/2019, 4:23:00-4:23:14. This admonition was repeated prior to closing arguments.

Smith argues the trial court erred in allowing evidence of the prior act as it was not probative of the charge of robbery in the first degree since force was not alleged to have been used. She further argues the testimony was unduly prejudicial. Alternatively, Smith, citing *Chumbler v. Commonwealth*, 905 S.W.2d 488, 493 (Ky. 1995), asserts that even if the evidence was admissible for limited purposes, the Commonwealth's presentation of the prior act evidence constituted reversible error because it far exceeded what was necessary to prove motive. The

---

[4] Record on Appeal.

Commonwealth argues the trial court did not err as the evidence was relevant to whether Smith and Moody had a common plan and was not overly prejudicial.

This claim is preserved. Therefore, we review for an abuse of discretion. *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Generally, all evidence which is deemed relevant is admissible. KRE 402. However, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury[.]" KRE 403. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." KRE 404(b). However, it may be admissible "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" KRE 404(b)(1).

The Commonwealth asserted two theories to support the charge of robbery in the first degree: (1) Smith's actions alone constituted the charge where,

in the course of removing Belk's property, she fought Rowe with the intent to accomplish the theft and injured his hand and ribs; and (2) Smith and Moody jointly intended to deprive Belk of its property, and Moody's use of the firearm was in furtherance thereof.  Smith's and Moody's defense at trial was that each acted separately, and Moody specifically denied foreknowledge of Smith's shoplifting or that his use of a firearm was motivated thereby.

We conclude that the trial court did not abuse its discretion.  Evidence of Smith's prior shoplifting while with Moody in the same store was probative as it made the existence of a shared intent or plan to commit theft—a necessary element of one of the theories of the case—at least slightly more probable.  Further, under the facts of this case, we reject Smith's assertion that the evidence itself, or the Commonwealth's presentation of the evidence, was unduly prejudicial.  In opening statements, and repeatedly throughout the trial, Smith conceded that she committed theft and urged the jury to return a verdict of guilty on that charge.  Accordingly, any risk that the jury would improperly rely on the evidence to find that Smith committed theft on October 25, 2018, was nullified.  Additionally, this case is distinguishable from *Chumbler* in that the Commonwealth did not belabor the prior bad act in presentation of its case in chief.

**Reasonable Doubt**

During voir dire, the prosecutor made the following statement:

-8-

We talk about the standard is beyond a reasonable doubt, alright? I cannot define that for you, nobody can. The courts have said no. Everybody here understands I did not say beyond any doubt, correct? Okay, I'm gonna give you an example, alright? I'm not much of a golfer[.] Who here knows Tiger Woods? Pretty good golfer to say the least. Me and Tiger show up [at the golf course] and we're going to play nine holes. Is it possible I would win? Possible, maybe his arm falls off. You never know, everything and anything is possible. Is it reasonable to believe I would win? No. No, not at all. You understand the difference, what's possible and what's reasonable? I have to prove this case beyond a reasonable doubt, alright?

Video ROA, 6/24/2019, 9:55:38-9:57:04.

Smith argues the prosecutor's statement violated the longstanding prohibition of defining reasonable doubt and seriously affected the fairness of her trial, alleging the result would have been different without this error. The Commonwealth disputes that the prosecutor's statement was impermissible and, alternatively, argues that Smith cannot prove the requisite harm.

The parties agree this claim is not preserved. Accordingly, we will review it only for a palpable error that affected Smith's substantial rights and resulted in manifest injustice. RCr[5] 10.26. Manifest injustice is an error which "so seriously affected the fairness, integrity, or public reputation of the proceeding as

---

[5] Kentucky Rules of Criminal Procedure.

-9-

to be shocking or jurisprudentially intolerable." *Miller v. Commonwealth*, 283 S.W.3d 690, 695 (Ky. 2009) (internal quotation marks omitted).

It has long been the rule in Kentucky that reasonable doubt is not to be defined for the jury by either the courts or the parties. RCr 9.56; *Commonwealth v. Callahan*, 675 S.W.2d 391, 393 (Ky. 1984). This applies to all stages of the trial's proceedings, including voir dire. *Callahan*, 675 S.W.2d at 393. Appellate courts have repeatedly found that this prohibition is not violated by statements which merely identify what reasonable doubt is not. *See Rogers v. Commonwealth*, 315 S.W.3d 303, 308 (Ky. 2010) (statement that "beyond a reasonable doubt" is not the same as the civil trial standard of "beyond a preponderance of the evidence" deemed permissible); *Cuzick v. Commonwealth*, 276 S.W.3d 260, 267-68 (Ky. 2009) and *Johnson v. Commonwealth*, 184 S.W.3d 544, 548-49 (Ky. 2005) (statements that "beyond a reasonable doubt" was not the same as "beyond a shadow of a doubt" deemed permissible).

Herein, the prosecutor went beyond merely stating that reasonable doubt was not beyond all doubt, which under our precedent would be permissible, and provided an example juxtaposing what was reasonable and what was possible. Consequently, we agree with Smith that the prosecutor's statement may have violated the prohibition against defining reasonable doubt. Nevertheless, we hold that the error did not rise to the level of manifest injustice where the prosecutor's

brief statement was made a full two days before deliberation, and there was a wealth of evidence to support Smith's conviction.

**<u>Directed Verdict</u>**

Pursuant to KRS 515.020(1), robbery in the first degree occurs when, during the course of committing a theft, "[a person] uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he: (a) causes physical injury to any person who is not a participant in the crime; or (b) is armed with a deadly weapon[.]" Physical injury means "substantial physical pain or any impairment of physical condition[.]" KRS 500.080(13).

Smith argues the Commonwealth failed to present sufficient evidence that either she or Moody used or threatened the use of physical force with the requisite intent to accomplish the theft. Smith notes that she dropped the stolen merchandise when grabbed by Rowe and argues her use of force was a justifiable response to the perceived threat posed by Rowe, a "sketchy looking guy." Smith also argues that there was no direct evidence that she and Moody agreed or planned to commit theft. Therefore, Smith asserts the trial court erred in denying her motion for directed verdict.

This claim is preserved. Therefore, "the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt[.]" *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991).

Herein, the proof was that Smith was in the process of committing a theft and, when stopped by Rowe, engaged in a physical struggle. Rowe testified that as a result of Smith's struggle, he suffered cuts on his hand and bruising and pain to his ribs and side. The fact Smith dropped the stolen merchandise does not preclude the jury from reasonably finding that her use of force was with the intent to accomplish the theft, especially where Smith did, in fact, abscond with stolen items. Further, the jury heard that Moody was aware of the shoplifting and that he was helping Smith. While Moody attempted to explain or mitigate these statements, there was sufficient evidence for the jury to find for the Commonwealth under either theory. Accordingly, the trial court did not err in denying Smith's motion for directed verdict.

## CONCLUSION

Therefore, and for the foregoing reasons, the Judgment and Sentence of the Hardin Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Shannon Dupree
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky